IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN J. TAURO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 09-0354 |
| v. | ) | |
| | ) | |
| | ) | |
| ALLEGHENY COUNTY; | ) | |
| MICHAEL H. WOJCIK, IN HIS OFFICIAL | ) | |
| CAPACITY AS COUNTY SOLICITOR, | ) | |
| AND INDIVIDUALLY; WILLIAM P. | ) | |
| MULLEN, IN HIS OFFICIAL CAPACITY | ) | |
| AS SHERIFF, AND INDIVIDUALLY; | ) | |
| and RAYMOND L. BILLOTTE, IN HIS | ) | |
| OFFICIAL CAPACITY AS COURT | ) | |
| ADMINISTRATOR, and INDIVIDUALLY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

Pending before this court is the motion to dismiss (Docket No. 7) filed by defendants

Allegheny County (the "County"), Michael Wojcik ("Wojcik"), and William Mullen ("Mullen")

and the motion to dismiss (Docket No. 11) filed by defendant Raymond L. Billotte ("Billotte").

The motion to dismiss filed by the County, Wojcik and Mullen seeks the dismissal of all claims

asserted by plaintiff John J. Tauro ("Tauro" or "plaintiff") against those defendants because 1)

plaintiff's complaint is frivolous and 2) plaintiff's claims are barred by the doctrine of collateral

estoppel.  Billotte's motion to dismiss seeks the dismissal of all claims against him for the same

reasons set forth in the other defendants' motion to dismiss and because the complaint fails to

state a claim against him.  Also before the court is plaintiff's motion to remove attorney (Docket

No. 16) and petition to assess cost of service (Docket No. 18).

Plaintiff filed this civil action asserting claims under 42 U.S.C. § 1983 for violations of

his constitutional rights to procedural and substantive due process under the Fourteenth

Amendment of the United States Constitution.  Although plaintiff's claims are not especially

well delineated, he appears to be claiming that there was a procedural defect in the collection

activities undertaken against him for unpaid child support and that County policies were

unconstitutional as applied and on their face for nonconformance with Pennsylvania law and

federal regulation. (Doc. No. 2, ¶¶ 18-23).

Plaintiff has filed suit in this court on the same set of facts in several prior cases.  In

2002, he filed a lawsuit against Judge Kathleen Mulligan, a family court judge with the Court of

Common Pleas of Allegheny County; Geraldine Redic, deputy administrator of the Family

Division of the Court of Common Pleas; Allegheny County; the Allegheny County solicitor; and

the assistant Allegheny County solicitor.  He challenged the authority of the Pennsylvania

Department of Public Welfare ("DPW") to collect child support payments at one time owed to

the mother of his child and the actions of those defendants in seeking collection of his unpaid

child support obligations.  See generally Tauro v. Mulligan, Civil Action No. 02-495 (W.D.Pa.

2002)(Conti, J.).  Plaintiff asserted that once the mother of his child and he entered an agreement

suspending his child support obligations, his payment responsibilities ceased.

The problem for plaintiff, however, was that his child's mother was on welfare assistance

and, in order to receive it, she assigned her child support rights to DPW.  See generally, Order

dated May 8, 2003 (Docket No. 39 in Civil Action No. 02-495) (adopting Report and

Recommendation dated Apr. 4, 2003 (Docket No. 37) at 15), aff'd 90 Fed. App'x 437 (3d Cir.

2004)(table).  When the mother and  Tauro signed a suspension agreement, the state court

entered an order confirming $14,162.75 in child support arrears which, by operation of the

mother's assignment, was due and owing to the DPW.  Tauro challenged the support orders

which stated "that if Mr. Tauro failed to 'make each payment on time and in full[,] . . . all arrears

[would] become subject to immediate collection by all . . . means listed,' which included

'contempt proceedings, credit bureau reporting, tax refund offset certification, driver's license

revocation, and the freeze and seiz[ure] of financial assets.'" Id. (Report and Recommendation at

3).  Tauro was noncompliant with the order.  Id. (Report and Recommendation at 4).  This court

dismissed Tauro's previous lawsuit as frivolous.  Among other things, the court stated with

respect to DPW's collection activities that:

> Allegheny County and its agents' pursuit of child support arrears
> owed to the DPW is expressly authorized under Pennsylvania and
> federal statute.  The Plaintiff, moreover, has failed to allege facts
> supporting any viable claims of constitutional deprivation under
> said statutes, which have been uniformly upheld by the federal and
> state courts alike.

Id. at 6-7.  The court held that the defendants in that action were entitled to various forms of

immunity, including the solicitors for their "'prosecut[ion]' of purported 'criminal charges in

family court,' and related activities." Id. (Report and Recommendation at 10).

      In 2005, plaintiff filed a second lawsuit naming as defendants the DPW, the "Domestic

Relations Section" of the "Allegheny County Family Division" ("DRS"), and the County

solicitor.  See Tauro v. Pennsylvania DPW, No. Civ. A. 05-480, 2005 WL 3003081 (W.D.Pa.

2005), aff'd, 206 Fed. App'x 152 (3d Cir. 2006).  Tauro in that lawsuit generally complained

about collection activities taken against him for "'welfare arrears'" owed in connection with

child support obligations.  Id. at 1.  He filed under "section 1983 to challenge collection efforts

regarding 'welfare arrears, for which no operation of . . . law exists,' and 'child support, which

each of the Defendants . . . knows does not exist.'" Id. at 2.  He also made claims suggesting due

process violations involving contracts between the DRS and the solicitor that permitted the

solicitor to act as the Title IV-D attorney for DPW in the collection of child support arrears.

Plaintiff asserted that the solicitor representing DRS, DPW, and the County was an automatic

violation of due process.  See generally Tauro v. Pennsylvania DPW, Civil Action No. 05-480

(W.D.Pa. 2005)(Conti, J.).

This court held that the doctrine of issue preclusion, also known as collateral estoppel,

barred plaintiff's claims. Plaintiff's claims were dismissed with prejudice as frivolous pursuant

to 28 U.S.C. § 1915(e)(2). On appeal, the United States Court of Appeals for the Third Circuit

affirmed the decision, stating:

> In 2005, Tauro filed a civil rights suit under 42 U.S.C. § 1983
> against the Pennsylvania Department of Public Welfare, the
> Allegheny County Solicitor, and the Domestic Relations Section,
> Allegheny County Family Division. The complaint is mostly a
> repetition of claims that were previously denied in Tauro v.
> Mulligan; namely, that the Family Court order assessing arrears
> was invalid, that DPW is not entitled to collect child support
> arrears that were owed to the mother, that his child support
> obligations had ended pursuant to an agreement that he had entered
> into with the mother, and that DPW's garnishments constitute a
> deprivation of property without due process of law.  Tauro also
> claims that the appearance by the County Solicitor in proceedings
> to collect arrears violated Pennsylvania law and that DPW has
> refused to participate in his pending action in the Commonwealth
> Court challenging the collection of his child support arrears.
>
> The District Court dismissed the complaint as frivolous, finding
> that Tauro's claims were barred by collateral estoppel.  After filing
> two motions for reconsideration, which were denied, Tauro
> appealed.  Because we find that Tauro's appeal has no arguable
> basis in law, we will affirm.

Tauro, 206 Fed. App'x at 153.

In 2008, Tauro filed suit against Justice Max Baer, Judge Kathleen R. Mulligan, and Judge Joan Orie-Melvin pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States. See generally Tauro v. Baer et. al., Civil Action No. 08-1545 (W.D. Pa. 2009)(Conti, J.). Among other things, plaintiff claimed that Justice Baer issued criminal warrants and held criminal trials in family court with the knowledge that he had no power to do so. Plaintiff contended that the defendants used arrest and incarceration to collect judgments without the power of law to do so, thereby creating an illegal "debtor's prison", in violation of the Constitutions of the United States and the Commonwealth of Pennsylvania. This court found that his claims were barred under the Rooker-Feldman doctrine because plaintiff sought relief in the form of a nullification of various orders rendered in state court. Tauro v. Baer, Civil Action No. 08-1545, Order dated Nov. 16, 2009, Docket No. 19.

Apparently unsatisfied with the prior results, plaintiff filed this lawsuit in 2009 contending that he was subject to due process violations in an "outlawed 'debtor's prison'" when he was found in civil contempt and arrested by the sheriff's office and incarcerated, pursuant to "County policy", to collect the child support judgment against him and that these County policies were unconstitutional "as applied" and "on their face." (Compl., Docket No. 2, ¶¶ 18-23). He further claims that the agreements between the solicitor and the DRS allowing the solicitor to represent DPW and the DRS in Title IV-D cases, were prohibited by Pennsylvania law, resulting in an automatic due process violation. (Id. ¶¶ 22-23). Billotte was apparently a signatory to at least one of these agreements. (Id. ¶ 10). Again, Tauro proceeds *in forma pauperis*, and again his lawsuit will be dismissed as frivolous under § 1952(e)(2).

*__Collateral estoppel precludes claims relating to the agreements and the solicitor__*

The doctrine of issue preclusion, also known as collateral estoppel, "ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to prior litigation.'" See Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1232 (3d Cir. 1995)(quoting Montana v. United States, 440 U.S. 147, 153 (1979)). "The prerequisites for the application of issue preclusion are satisfied when: "'(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'"" See id. (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)(quoting In re Braen, 900 F.2d 621, 628-29 n.5 (3d Cir. 1979)).

These elements are met here for plaintiff's claims regarding the agreements and the actions of the solicitor relating to plaintiff's civil contempt proceedings. The immunity of the solicitor defendants for their role in "civil contempt" proceedings against plaintiff was "actually litigated" and "essential" to "a final and valid judgment" of this court. Issue preclusion, therefore, applies to these repeated claims. See Report and Recommendation dated Apr. 4, 2003 (Docket No. 37 in Civ. Action No. 02-495) at 10-13. The same is true of plaintiff's "agreement" claims. Plaintiff asserts that "[t]he Solicitor has engaged in representation which is prohibited by Pennsylvania law, and is, as a matter of Pennsylvania law, an automatic due process violation." Compl. ¶ 2. The complaint states that the solicitor entered into agreements effectuating the

6

prohibited representation.   Id. ¶ 10.  In its opinion affirming the decision of this court in

plaintiff's 2005 case, the Court of Appeals for the Third Circuit noted:

> Tauro's remaining claims, that state law precludes the County
> Solicitor from representing the Domestic Relations Section in its
> collection proceedings and that DPW has not appeared in its
> pending Commonwealth Court action, are similarly without merit.
> The mere violation of state law does not result in a due process
> violation.  Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 88
> L.Ed. 497 (1944).  Even if the county solicitor was acting contrary
> to Pennsylvania law when collecting support arrears owed to
> DPW, that action alone would not violate the Due Process Clause.

 Tauro, 206 Fed. App'x at 154.  Plaintiff's stated claims relating to the agreements and the

representation by the solicitor, including those against Billotte for being a signatory to those

agreements and the County for promulgating the policy, are therefore barred by the doctrine of

issue preclusion.

### *Remainder of plaintiff's claims have no basis in law or fact*

Plaintiff asserts that the reminder of his claims against the County and the sheriff are not

barred by issue preclusion because they involve violations of "45 C.F.R., which this court has

never addressed or made rulings thereon." (Pl.'s Answer to the Mot. to Dismiss, Docket No. 14,

¶ 1).  Plaintiff's remaining claims have no constitutional basis because, under the existing factual

circumstances and the findings of the previous decisions, the actions of the sheriff do not result

in an illegal "debtor's prison" or being charged with a "civil crime" under the Pennsylvania or

United States Constitutions or any relevant law.  Plaintiff seems to suggest that, generally, civil

contempt with resulting arrest and incarceration pending payment of child support amounts to

being charged with a  "civil crime" and being thrown in "debtor's prison." (Compl. ¶¶ 1, 11,

17.)  Plaintiff asserts that the County's policies permitting civil contempt in those circumstances

are unconstitutional "as applied" and "on their face." Id. ¶ 22. Plaintiff suggests that the sheriff

participated in these purportedly illegal policies by executing the civil contempt warrants and

incarcerating plaintiff. Id. ¶¶ 3, 11. Plaintiff argues that these policies violate the due process

requirements of "45 C.F.R" and "23 Pa.C.S.A." Id. ¶¶ 15-16.

Plaintiff's remaining claims have no basis in law or fact. Civil confinement pursuant to a

civil contempt order is a remedial measure that "'involves confining a contemnor *indefinitely*

until he complies with an affirmative command such as an order 'to pay alimony, or to surrender

property ordered to be turned over to a receiver . . .'"" and has been repeatedly discussed by the

United States Supreme Court as a valid method of assuring compliance with judgments when

there is a built-in condition for release. Chadwick v. Janecka, 312 F.3d 597, 613 (3d Cir. 2002)

(citing Int'l Union v. Bagwell, 512 U.S. 821, 828 (1994)(quoting Gompers v. Buck's Stove &

Range Co., 221 U.S. 418, 442 (1911)); see Hicks ex rel. Feiock v. Feiock, 485 U.S. 624 (1987).

In the instant case, plaintiff's condition was paying the child support due to DPW. Based upon

the decisions and filings in the prior cases, it is evident that plaintiff  failed to pay his child

support, a judgment order was entered against him by the court of common pleas for

nonpayment, and a petition for contempt and civil contempt proceedings was initiated against

him for his failure to comply with the order. See generally, Order dated May 8, 2003 (Docket

No. 39 in Civil Action 02-495) (adopting Report and Recommendation dated Apr. 4, 2003

(Docket No. 37)), aff'd, 90 Fed. App'x 437 (3d Cir. Feb. 27, 2004)(table). Although plaintiff

does not challenge the orders themselves, as he did in his 2008 case, he is challenging the

process and the role of the sheriff in that process.

Plaintiff has never, in any of his cases, argued an inability to pay his child support, but instead put forth an "undying conviction that the DPW cannot be awarded, and that it cannot collect upon, child support arrears ordered by the Family Division." Report and Recommendation dated Apr. 4, 2003 (Docket No. 37 in Civ. Action No. 02-495) at 14. Plaintiff has repeatedly asserted that the mother had divested him of any duty to pay the past due support and that any collection activities by the DPW, Allegheny County and its agents are without support in the law. As noted above, the court previously determined in the 2002 case that DPW was entitled to proceed with collection activities against plaintiff for nonpayment of his child support because of a valid assignment by the mother and upheld the relevant statutory assignment schemes. Plaintiff acknowledges that in order to be released from the ensuing confinement, he needed to pay the child support judgment against him. (Compl. ¶ 17). Where an individual is able to pay the debt and the purpose of the sanctions are remedial or coercive, the characterization of incarceration for civil contempt as "debtor's prison" is baseless. Northeast Women's Shelter, Inc. v. McMonagle, 939 F.2d 57, 68-70 (3d Cir. 1991). To the extent plaintiff attempts to make a new constitutional or statutory claim that does not involve nullifying the contempt orders themselves, there is no legal or factual basis for plaintiff's suggestion that the County policy permitting civil contempt as an enforcement action for nonpayment of child support constituted an illegal "debtor's prison" or in being charged with a "civil crime."

In addition, this court could find no case law suggesting that civil contempt in these circumstances could or would violate the provisions or "due process requirements"of "45

C.F.R"[1] or "23 Pa.C.S.A."[2]  Plaintiff suggests that 45 C.F.R. § 302.703(a)(9)(i) somehow

provides due process protections and proves that "Family Court, under the direct supervision of

the County Solicitor, are using arrest and incarceration in the collection of a judgment; and have

no jurisdiction to collect judgments." (Pl.'s Answer ¶ 8).  The federal regulation, however, does

not afford protection to plaintiff or affect the jurisdiction of any state entity or person acting

under color of state law to enforce child support judgments, including Mullen.  The provision

relied upon by plaintiff mandates that Pennsylvania have a statute providing that any procedure

---

1.      45 C.F.R. § 302.70 provides:

(a) Required Laws. The State plan shall provide that, in accordance with sections 454(20)
and 466 of the Act, the State has in effect laws providing for and has implemented the
following procedures to improve program effectiveness:
>        (9) Procedures which require that any payment or installment of support under
>        any child support order, whether ordered through the State judicial system or
>        through the expedited processes required by paragraph (a)(2) of this section, is
>        (on and after the date it is due):
>>              (i) A judgment by operation of law, with the full force, effect, and
>>              attributes of a judgment of the State, including the ability to be enforced....

2       In fact, 23 PA. CONS. STAT. ANN. § 4345 contains the statutory basis for permitting civil
contempt for failure to comply with a child support contempt order. It provides:
(a) General rule. - A person who willfully fails to comply with any order under this

chapter, except an order subject to section 4344 (relating to contempt for failure of
obligor to appear), may, as prescribed by general rule, be adjudged in contempt.
Contempt shall be punishable by any one or more of the following.
>        (1) Imprisonment for a period not to exceed six months.

>        (2) A fine not to exceed $1,000.

>        (3) Probation for a period not to exceed one year.

(b) Condition for release. - An order committing a defendant to jail under this section

shall specify the condition the fulfillment of which will result in the release of the
obligor.

requiring payment of support under any child support order operate as a "judgment by operation

of law." 45 C.F.R. § 302.70(a)(9)(i).  It is frivolous to argue that provision protects plaintiff for

failing to comply with a "judgment."  Since civil contempt has long been a valid method of

enforcing child support judgments and considering the number of cases filed by plaintiff based

upon the same or similar kinds of arguments which have been found frivolous, this court finds

that plaintiff's constitutional or statutory arguments to support these additional allegations are

without legal merit.

### *Plaintiff's claims are frivolous pursuant to 28 U.S.C. § 1915(e)(2)*

Claims are deemed frivolous "when the plaintiff asserts a violation of a legal interest that

does not exist," "when the plaintiff asserts facts that do not support a claim," or when his claims

"lack[] an arguable basis in law or fact." See Esnault v. Suthers, 24 Fed. App'x 854, 855 (10th

Cir. 2001)(citations omitted); Smith v. New York City Trans Auth., No. 99-7392, 1999 WL

1212562, at *1 (2d Cir. Dec. 13, 1999)(citations omitted); Sack v. Lowder, Nos. 91-7082, 91-

7111, 1992 WL 2884, at *7 (10th Cir. Jan. 6, 1992).  In light of the application of collateral

estoppel, plaintiff's current claims are frivolous. See id.; see also, Newton v. Nixon, 110 Fed.

App'x 734, 734-35 (8th Cir. Oct. 12, 2004)(affirming district court's dismissal of pleading as

frivolous based on application of collateral estoppel); Lewis v. Green, No. 04-10070, 2004 WL

1399202, at *1 (5th Cir. June 22, 2004)(same), cert. denied, 543 U.S. 1155 (2005).

### *Conclusion*

For all the reasons stated above, the pending motions to dismiss (Docket Nos. 7, 11) will

be granted.  This court will dismiss this action, with prejudice, as frivolous under 28 U.S.C. §

1915(e)(2).  Plaintiff's motion to remove attorney (Docket No. 16) will be dismissed as moot.

Defendants County, Wojcik, and Mullen did not respond to plaintiff's petition to assess cost of

service (Docket No. 18).  If they fail to respond within 20 days of this order, cost of service will

be assessed against them.[4]

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated: November 24, 2009

cc:   John J. Tauro
      5309 Perrysville Rd. 1st Fl.
      Pittsburgh , PA 15229

---

4      Billotte returned a waiver of service on June 12, 2009 and need not respond to the
petition.